NOT FOR PUBLICATION

Signed: August 06, 2008

_____
**RANDALL J. NEWSOME**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re Leonil Thomas Cabansay and Michelle Roble Cabansay, <br><br> Debtor. | Case No. 07-42805 RN7 <br> Chapter 7 |
| Florentino Abena, <br><br> Plaintiff, <br> v. <br> Leonil Thomas Cabansay and Michelle Roble Cabansay, <br><br> Defendants. | Adv. Pro. 07-4193 AN |

### FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

This matter is before the Court following a July 14, 2008 trial of the above-captioned adversary proceeding filed by the Plaintiff, Florentino Abena (herein "Abena"), to determine the dischargeability of a debt incurred by Leonil Thomas Cabansay and Michelle Roble Cabansay (herein collectively "the Debtors"). In accordance with Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052,[1] upon consideration of the record in this case and the testimony, evidence, and pleadings provided at the trial, the Court hereby submits the following findings of fact, opinion and conclusions of law.

---

[1] Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. sections 101-1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

# FINDINGS OF FACT

**1.** Debtor Michelle Roble Cabansay (herein "Michelle") is a registered nurse and operated a business named Masterpiece Homes that staged furniture in homes offered for sale by real estate brokers, and later also sold furniture. Michelle staged houses for Diane Madewell, a real estate agent working at a Century 21 real estate office. (Trial Transcript ("TR") at 20-22, 75-76, 78; Abena Ex. 3)

**2.** Rick Lamela is a licensed real estate agent, and he is friends with and has known Madewell for about 14 years. Lamela is also a co-worker with Abena for the Mt. Diablo School District, and is friends with and has known Abena for about 8 years, having formerly dated Abena's sister. (TR at 6-8, 10, 15, 21, 38)

**3.** At some point in or about mid-2006, Michelle was in need of money to secure the release of certain furniture imported from the Philippines and held by the U.S. Customs Service at the Port of Oakland. Lamela met Michelle through Madewell and learned of her need for money. Although Lamela knew Michelle for only about one month, because they are both originally from the Philippine island of Cebou, he decided to ask his friend Abena, who is also from the Phillippines, about providing Michelle a loan. (TR at 6-12, 16-19, 38)

**4.** Thereafter, Abena and Michelle spoke on the telephone two or three times, with Michelle explaining why she needed the money. During one of these conversations Abena decided to loan her the money. On or about July 13, 2006, Abena, Michelle and her husband, Debtor Leonil Thomas Cabansay (herein "Leonil"), met at Lamela's office. At this meeting, Abena and Michelle entered into a transaction whereby Abena loaned Michelle $10,000 at 6% interest. The loan transaction was memorialized by a Certificate of Receipt (herein the "Receipt") typed by Lamela's secretary and leaving blanks for certain information to be entered. Lamela told Michelle what information to enter

- 2 -

1 on the blanks, she did so and signed the Receipt. Leonil did not sign the Receipt.[2] The Receipt
2 provides for full repayment of the loan in 6 months, by December 13, 2006. (TR at 9-11, 43-44,
3 80-84; Abena Ex. 4)

**5.** At the July 13, 2006 meeting, Abena gave Michelle $10,000 in cash, and Michelle gave Abena three post-dated checks for repayment of the loan, two for $600 dated August 13, 2006 and September 13, 2006, and one for $10,600 dated October 13, 2006. The $600 check dated August 13, 2006 was deposited into Abena's bank account and honored for payment. Thereafter, Michelle contacted Abena to tell him to hold off on depositing the September 13, 2006 dated check, because she did not have enough money in her account to cover it. Abena, however, had already deposited that check, and it was returned for having been drawn on insufficient funds. During this conversation Michelle and Abena agreed to meet at Madewell's house, where Michelle would give Abena additional post-dated checks to replace the checks she initially gave him. (TR at 84-86, 90-91; Abena Exs. 5, 6 and 12a)

**6.** At the meeting at Madewell's house, Michelle gave Abena three additional post-dated checks, two for $600 dated October 13, 2006 and November 13, 2006, and one for $10,600 dated December 13, 2006, the final due-in-full date of the loan. The replacement checks were not honored in repayment of the loan. (TR at 43-44, 61-63, 92; Abena Ex. 5, 6) [3]

**7.** Thereafter, on or about February 13, 2007, Abena filed a lawsuit against the Debtors in the Contra Costa County Superior Court (Case No. VCM097390, herein the "Superior Court Action") alleging, *inter alia*, a breach of the loan agreement. On or about April 13, 2007, a Default Judgment was entered in the Superior Court Action in favor of Abena and against the Debtors, for $10,490. (TR at 46, 57; Abena Exs. 1, 2 and 7)

---

[2] In addition to not having signed the Receipt, no evidence was presented that Leonil was otherwise obligated on the loan or that he made a false representation in connection with the loan transaction. Accordingly, on motion by the Debtors at trial, Leonil was dismissed as a defendant in this adversary proceeding. (TR at 72-73)

[3] Although Lamela testified that the interest rate was 6% *per annum*, the Receipt provides for payment of 6% interest on the $10,000 *per month*. The $600 post-dated checks thereafter provided in repayment of the loan also evidence that the loan was for 6% interest per month, which would actually be 72% interest per annum. (TR at 12-13)

- 3 -

1 **8.** On August 31, 2007, the Debtors filed this Chapter 7 case. Thereafter, on November 30, 2 2007, Abena filed the instant adversary proceeding complaint asserting a cause of action pursuant 3 to §523(a)(2)(A) to determine the dischargeability of the $10,490 owed by the Debtors to Abena 4 pursuant to the Default Judgment.

## OPINION & CONCLUSIONS OF LAW

6 Section 523(a)(2)(A) excepts from discharge any debt for money, property, services or credit 7 obtained by debtor's "false pretenses, false representation, or actual fraud." *Nahman v. Jacks (In re* 8 *Jacks)*, 266 B.R. 728, 733 (9th Cir. BAP 2001). To prevail on a claim pursuant to section 9 523(a)(2)(A), a creditor must establish, by a preponderance of the evidence: **1)** a misrepresentation, 10 fraudulent omission or deceptive conduct by the debtor; **2)** knowledge by the debtor of the falsity 11 or deceptiveness of his statement or conduct; **3)** an intent to deceive; **4)** justifiable reliance by the 12 creditor on the debtor's statement or conduct; and **5)** damage to the creditor proximately caused by 13 his reliance on the debtor's statement or conduct. *Turtle Rock Homeowners Association v. Slyman* 14 *(In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000); *Grogan v. Garner,* 498 U.S. 279, 291 15 (1991);*California State Bank v. Lauricella (In re Lauricella)*, 105 B.R. 536, 539 (9th Cir. BAP 1989) 16 (burden of proof is on creditor asserting non-dischargeability of debt); *Field v. Mans*, 516 U.S. 59 17 (1995) (justifiable reliance the standard under § 523(a)(2)(A)).

18 At trial, Abena testified that he made the loan to Michelle, and thought that she could repay 19 him based upon several factors. She was a registered nurse, good looking and well-dressed. Her 20 business card identified her as the president of Masterpiece Homes. She allegedly stated that she 21 would "pay me back within a month." Most importantly he relied upon his friend Lamela's 22 statement that Michelle operated a successful business. (TR 68-70)

23 Although Abena asserts that Michelle stated she would repay the loan within a month, his 24 testimony is directly contradicted by that of Michelle, who testified that she told him only that she 25 would repay him as soon as possible. Additionally, Abena's testimony in this regard is also 26 contradicted by the Receipt, which provides for a 6 month repayment period, and by Abena's 27 acceptance of the initial post-dated checks which anticipate repayment within 3 months. (TR at 84-

28

- 4 -

85; Abena Ex. 4) The Receipt and the post-dated checks support Michelle's testimony. As such, the Court credits Michelle's testimony over that of Abena that she did not misrepresent the repayment term of the loan to be less than one month. Further, the Court considers Abena's testimony as generally not credible as to the parties negotiations over this loan transaction.

Furthermore, none of Abena's asserted reasons for making the loan were based upon a misrepresentation, known falsity or an intent to deceive by Michelle, and there is no evidentiary basis for concluding that Abena relied on anything Michelle said or did, justifiably or otherwise. Additionally, no credible evidence was presented that Michelle misrepresented her employment status or financial condition, or that Abena, Lamela or anyone else asked her or Leonil about such matters before entering into the loan transaction.[4] The evidence shows little more than Abena having made the loan in reliance upon Lamela, based upon his perceptions of Michelle, and Abena's cultural ties to the Phillippines that he shared with Michelle. These perceptions are not sufficient to find the debt non-dischargeable pursuant to §523(a)(2)(A).

In accordance with the foregoing, the Court finds that the $10,490 Default Judgment award is not excepted from a discharge entered in the above-captioned Chapter 7 bankruptcy case.

**IT IS SO ORDERED**.

** END OF ORDER**

---

[4] Section 523(a)(2)(A), does not apply to a false representation with respect to a debtor's financial condition. A determination as to the dischargeability of a debt based upon a materially false and intentionally deceptive representation concerning a debtor's financial condition is made solely pursuant to §523(a)(2)(B), which requires that such a representation be made by a written statement. *Field v. Mann*, 516 U.S. at 66; *Eugene Parks Law Corp. Defined Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992). Here, no evidence was presented that the Debtors made such a false or deceptive written statement concerning their financial condition.

| | |
|---|---|
| 1 | **COURT SERVICE LIST** |
| 2 | |
| 3 | Kenneth Anthony Avelino |
| | Avelino Law Firm |
| 4 | 4993 Golden Foothill Pkwy #9 |
| | El Dorado Hills, CA 95762 |
| 5 | |
| | James A. Pixton |
| 6 | Law Offices of James A. Pixton |
| | 1524-A Lincoln Ave. |
| 7 | Alameda, CA 94501 |
| 8 | Office of the U.S. Trustee |
| | 1301 Clay St. #690N |
| 9 | Oakland, CA 94612 |
| 10 | Tevis Thompson |
| | P.O. Box 1110 |
| 11 | Martinez, CA 94553 |

- 6 -

Case: 07-04193    Doc# 18    Filed: 08/06/08    Entered: 08/07/08 11:02:08    Page 6 of 6